# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

YOLANDA CAVAZOS; PR, a minor child by Yolanda )
Cavazos, Parent and Next Friend; CR, a minor child by )
Yolanda Cavazos, Parent and Next Friend; MR, a minor )
child by Yolanda Cavazos, Parent and Next Friend; )
MARIA DEL CARMEN MENDOZA DE RUBIO; )
VIRGINIA MORALES; JM (1), a minor child by Virginia )
Morales, Parent and Next Friend; JM (2), a minor child by )
Virginia Morales, Parent and Next Friend; JM (3), a minor )
child by Virginia Morales, Parent and Next Friend; JM (4), )
a minor child by Virginia Morales, Parent and Next Friend; )
JM (5), a minor child by Virginia Morales, Parent and Next )
Friend; NM, a minor child by Virginia Morales, Parent and )
Next Friend; SANTOS ORTIZ; VALERIANO ORTIZ; )
ESMERALDA RUBIO; JV (1), a minor child by Esmeralda )
Rubio, Parent and Next Friend; JV (2), a minor child by )
Esmeralda Rubio, Parent and Next Friend; JV (3), a minor )
child by Esmeralda Rubio, Parent and Next Friend; VMV, )
a minor child by Esmeralda Rubio, Parent and Next Friend; )
and JRV, a minor child by Esmeralda Rubio, Parent and )
Next Friend; MARIA CARMEN RUBIO; MONICA )
RUBIO; PEDRO RUBIO; MARIA JESUS RUBIO )
NIEVES; ELEAZAR SERNA; EMS, a minor child by )
Eleazar Serna, Parent and Next Friend; ES, a minor child )
by Eleazar Serna, Parent and Next Friend; MJS, a minor )
child by Eleazar Serna, Parent and Next Friend; SSS, a )
minor child by Eleazar Serna, Parent and Next Friend. )
)
) Case No: 19-11635
Plaintiffs, )
)
v. ) JURY TRIAL DEMANDED
)
WAR-AG FARMS, LLC; THE SPUD FACTORY, LLC, )
d/b/a DURUSSELS' POTATO FARM; DEE ANN )
 WARNER, an individual; and D AND D WARNER )
LAND, LLC; jointly and severally; )
)
Defendants. )

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

### I. PRELIMINARY STATEMENT

1.      In 2015 and 2016, Defendants War-Ag Farms, LLC, The Spud Factory, LLC d/b/a DuRussels' Potato Farm, and Dee Ann Warner (hereinafter "Employer Defendants") recruited farmworkers and their family members, including Plaintiffs, from their homes in Texas to work in and around Washtenaw County, Michigan  hand-harvesting and packaging for sale vegetables and other fresh produce. Plaintiffs were induced to come to Michigan under the promises of "good work," housing, and the payment of at least the Michigan minimum wage. Upon arrival in Michigan, Employer Defendants housed the farmworkers and their family members, including Plaintiffs, in a substandard migrant labor camp, which was owned by Defendant D & D Warner Land, LLC. Over the course of the harvest seasons, Plaintiff-employees were not paid the required minimum wage under state and/or federal law and were not paid for all hours worked.

2.      Twenty-nine (29) Plaintiffs bring this action to obtain redress for Defendants' violations of Plaintiffs' rights, during working Plaintiffs' recruitment and employment for Defendants throughout the 2015 and 2016 agricultural seasons, arising under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801, *et seq.* ("AWPA"); Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"); Michigan's Workforce Opportunity Wage Act ("WOWA"), Mich. Comp. Laws Ann. § 408.414; and the Bullard-Plawecki Employee Right to Know Act, MICH. COMP. LAWS §§ 423.501 *et seq.* ("ERKA").

### II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337 in that this action arises from federal claims under FLSA 29 U.S.C. § 216(b) and AWPA 29 U.S.C. § 1854(a).

4.      This Court has supplemental jurisdiction over the related state claims pursuant to 28 U.S.C. § 1367, because the state claims are so related to the federal claims that they form part of the same case or controversy.

5.      This Court is empowered to enter declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 57.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events and omissions giving rise to the claims asserted took place in Washtenaw County, Michigan.

7.      Venue is also proper pursuant to AWPA 29 U.S.C. § 1854(a).

### III. PARTIES

8.      Four (4) Plaintiffs— Maria Del Carmen Mendoza de Rubio, Virginia Morales, Esmeralda Rubio, Maria Carmen Rubio —were employed by Employer Defendants during both the 2015 and 2016 seasons.

9.      Plaintiffs Maria Del Carmen Mendoza de Rubio and Maria Carmen Rubio are monolingual Spanish speakers, who do not read or understand written English.

**2015 Plaintiffs**

10.      In 2015, seven (7) Plaintiffs—Virginia Morales, Maria Del Carmen Mendoza de Rubio, Santos Ortiz, Valeriano Ortiz, Esmeralda Rubio, Maria Carmen Rubio, Monica Rubio, (collectively referred to as the "2015 Working Plaintiffs")—were employed by Employer Defendants as migrant agricultural workers and housed in a migrant camp owned by Defendant D & D Warner Land, LLC and controlled by Employer Defendants.

11.      The 2015 Working Plaintiffs are all residents of the State of Texas and migrated from Texas in 2015 to work for Employer Defendants.

12.    Each 2015 Working Plaintiff is a natural person, currently residing in Hidalgo County in the State of Texas.

**2016 Plaintiffs**

13.    In 2016, nine (9) Plaintiffs—Yolanda Cavazos, Virginia Morales, Maria Del Carmen Mendoza de Rubio, Esmeralda Rubio, Maria Carmen Rubio, Maria Jesus Rubio Nieves, PR, Pedro Rubio, and Eleazar Serna (collectively referred to as the "2016 Working Plaintiffs")—were employed by Employer Defendants as migrant agricultural workers and housed in a migrant camp owned by Defendant D & D Warner Land, LLC and controlled by Employer Defendants.

14.    The 2016 Working Plaintiffs were all residents of the State of Texas and migrated from Texas in 2016 to work for Employer Defendants.

15.    Each of the 2016 Working Plaintiffs are natural persons who currently reside in Hidalgo County in the State of Texas, except Plaintiffs Maria Jesus Rubio Nieves and Eleazar Serna are natural persons who currently reside in Kent County in the State of Michigan.

16.    Seventeen (17) Plaintiffs—EMS, ES, MJS, SSS, JV (1), JV (2), JV (3), VMV, JRV, CR, MR, JM (1), JM (2), JM (3), JM (4), JM (5) and NM—are each a non-working, minor child of a 2016 Working Plaintiff who resided with his or her parents in the housing provided by Employer Defendants and Defendant D & D Warner Land, LLC and are collectively referred to as the "2016 Non-Working Plaintiffs."

17.    The nine (9) 2016 Working Plaintiffs and the seventeen (17) 2016 Non-Working Plaintiffs are hereinafter collectively referred to as the "2016 Plaintiffs."

**Defendants**

18.     Defendant D & D Warner Land, LLC ("Warner Land") is registered as a limited liability company in the state of Michigan. Warner Land may be served through its registered agent, Dee Ann Warner at 2170 West Munger Road, Tecumseh, Michigan 49286. The mailing address of the registered office is P.O. Box 155, Tipton, MI 49287.

19.     At all times relevant, Defendant Warner Land maintained legal or equitable interest in the migrant labor housing located at 13993 DuRussel Drive, Manchester, Michigan with camp identification number 81-0005 and camp name "East Camp" (hereinafter "East Camp").

20.     Defendant War-Ag Farms, LLC ("War-Ag") is registered as a limited liability company in the state of Michigan. War-Ag may be served through its registered agent, Dee Ann Warner at 2170 West Munger Road, Tecumseh, Michigan 49286. The mailing address of the registered office is P.O. Box 155, Tipton, MI 49287.

21.     Defendant The Spud Factory, LLC, d/b/a DuRussels's Potato Farm ("Spud Factory") is registered as a limited liability company in the state of Michigan. Spud Factory may be served through its registered agent, Dee Ann Warner at 2170 West Munger Road, Tecumseh, Michigan 49286. The mailing address of the registered office is P.O. Box 155, Tipton, MI 49287.

22.     Defendant Dee Ann Warner ("Warner") is a natural person with her permanent place of residence in Lenawee County, Michigan.

23.     Defendant Warner is the registered agent and member of Defendant Warner Land. At all relevant times, Defendant Warner managed and had final decision-making authority regarding the migrant labor camp and property owned by Defendant Warner Land.

24.     Defendant Warner is the registered agent, organizer, owner, and member of Defendant War-Ag Farms.

25.     Defendant Warner is the registered agent and managing member of Defendant Spud Factory.

26.     At all times pertinent hereto, Defendant Warner managed the operations of both War-Ag Farms and Spud Factory.

27.     Defendant Warner managed and had the final decision-making authority for both War-Ag Farms and Spud Factory regarding, *inter alia*, the recruitment, supervision, hiring, firing, housing and payroll of migrant and seasonal employees, including Plaintiffs.

28.     Defendant Warner was in control of the day-to-day operations of War-Ag Farms and Spud Factory, including assigning work schedules, deciding when to begin and quit work, and the like.

29.     At all relevant times, Defendant Warner was acting on behalf of Defendants War-Ag Farms and Spud Factory.

30.     "Employer Defendants" refers to Defendants War-Ag, Spud Factory, and Warner.

31.     Employer Defendants operated a farm in Washtenaw County, near Manchester, Michigan where they grew, harvested and packed a variety of fresh produce including: parsley, cilantro, radicchio, radishes, spinach, turnips, potatoes, and kale.

32.     At all relevant times to this action, Employer Defendants were each the "employer" of each Working Plaintiff within the meaning of the AWPA, 29 U.S.C. § 1802(2), FLSA, 29 U.S.C. § 203(d) and WOWA, M.C.L.S. 408.412(d).

33.     At all times relevant to this action, Employer Defendants did business in the state of Texas by recruiting Texas residents, including the 2015 Working Plaintiffs and the 2016 Working Plaintiffs, directly or through intermediaries in Texas for employment in Michigan.

34.     All of the actions and omissions of the Employer Defendants were undertaken by Defendant Warner, either directly or through an authorized agent, or by an authorized agent of the Employer Defendants.

35.     At all times relevant to this action, Defendant Warner was an agent of Employer Defendants, acting within the scope of her agency.

36.     Employer Defendants knew, or should have known, of the policies, practices, acts, and conditions alleged.

## IV. CLAIMS FOR RELIEF

## COUNT I:

## 2015 VIOLATIONS OF THE MIGRANT AND SEASONAL AGRICULTURAL PROTECTION ACT BY EMPLOYER DEFENDANTS

37.     The Plaintiffs incorporate and re-allege all above-stated paragraphs of this complaint as if fully set forth herein.

38.     The 2015 Working Plaintiffs bring this cause of action against all Employer Defendants.

39.     At all times relevant to this action, Employer Defendants were the "employer" of each 2015 Working Plaintiff within the meaning of AWPA, 29 U.S.C. §1802(2).

40.     Each Employer Defendant was an agricultural employer of each 2015 Working Plaintiff within the meaning of AWPA, 29 U.S.C. §1802(2).

41.     At all times relevant to this action, each 2015 Working Plaintiff was a migrant agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A).

42.     Each 2015 Working Plaintiff was employed by and was an employee of each Employer Defendant within the meaning of the AWPA, 29 U.S.C. § 1802(5).

43.    Employer Defendants contacted, directly or through an agent, 2015 Working Plaintiffs, while each 2015 Working Plaintiff was residing in Texas, to recruit 2015 Working Plaintiffs to work for Employer Defendants in 2015.

44.    No 2015 Working Plaintiff received any written disclosures regarding the work terms and conditions of employment for Employer Defendants prior to them leaving Texas for Michigan.

**Timekeeping and Payment**

45.    Employer Defendants paid Plaintiffs Maria Del Carmen Mendoza de Rubio, Virginia Morales, Esmeralda Rubio, Maria Carmen Rubio and Monica Rubio based on an hourly rate of $8.15 per hour for some activities ("hourly rate activities") and based on a piece rate for other activities ("piece-rate activities"). The piece rate varied depending on the activity.

46.    Plaintiffs Maria del Carmen Mendoza de Rubio, Esmeralda Rubio, and Maria Carmen Rubio each have at least one pay period in which she was not paid for all "piece-rate activities" performed during that pay period.

47.    Employer Defendants did not track the time that 2015 Working Plaintiffs spent performing "piece-rate activities."

48.    Employer Defendants' payroll records do not indicate the total number of hours worked by each 2015 Working Plaintiff.

49.    Employer Defendants failed to provide each 2015 Working Plaintiffs a payroll record for each pay period that included the total hours worked during that pay period.

50.    Employer Defendants failed to pay Plaintiffs Maria del Carmen Mendoza de Rubio, Maria Carmen Rubio, and Esmeralda Rubio timely for all pieces picked.

51.    Employer Defendants failed to issue a payment to Plaintiff Esmeralda Rubio for her last week of work performed during the 2015 season, until around June or July 2016.  When Plaintiff

Esmeralda Rubio tried to cash the check she was unable to do so. Plaintiff Esmeralda Rubio still has not received payment for her work performed during the last pay period of the 2015 season.

52.     Employer Defendants paid Plaintiff Valeriano Ortiz on an hourly rate of between $8.75 and $9.25 per hour.

53.     Plaintiff Valeriano Ortiz expected to be paid at a rate between $13 and $14 per hour, based on his prior employment at the DuRussel Farm in 2014 and years past.

54.     Employer Defendants paid Plaintiffs Maria Del Carmen Mendoza de Rubio and Maria Carmen Rubio incorrectly. Employer Defendants did not timely pay all the social security and unemployment compensation taxes due to Plaintiffs.

55.      Employer Defendants failed to issue a timely payment to Plaintiffs Santos Ortiz, Valeriano Ortiz and Monica Rubio relating to their final paycheck for pay period August 3, 2015 through August 9, 2015.

**Employment Conditions**

56.     In 2015, Employer Defendants employed migrant agricultural workers, including 2015 Working Plaintiffs, beginning on or around May 25, 2015 and ending on or around November 2, 2015.

57.     No 2015 Working Plaintiff saw or received a poster setting forth the rights and protections afforded to migrant and seasonal agricultural workers.

58.     Employer Defendants, jointly and separately, intentionally violated the 2015 Working Plaintiffs' rights under the AWPA and its attendant regulations by, *inter alia*:

    A.  Failing to disclose in writing all the terms and conditions of employment required by 29 U.S.C. § 1821(a) at the time of recruitment;

B. Failing to make, keep, and preserve payroll records for each worker for each pay period in violation of 29 U.S.C. § 1821(d)(1);

C. Failing to provide accurate payroll records in violation of 29 U.S.C. § 1821(d)(2);

D. Failing to pay wages owed when due as required by 29 U.S.C. § 1822(a);

E. Violating the workings arrangement, in violation of 29 U.S.C. § 1822(c), by:

    i. Failing to pay the hourly rate for each hour worked and/or piece rate for each "piece-rate activity;"

    ii. Failing to pay wages timely and in compliance with the Michigan Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws 408.471, *et seq.*; and/or

    iii. Failing to comply with all applicable employment-related and health and safety laws, including the FLSA and WOWA.

59. Employer Defendants, jointly and separately, intentionally violated Plaintiffs Maria Del Carmen Rubio Mendoza and Maria Carmen Rubio's rights under the AWPA and its attendant regulations by failing to provide required disclosures and postings in Spanish as required by 29 U.S.C. § 1821(g).

60. Employer Defendants are liable for each violation of the AWPA as set forth in this count, to each 2015 Working Plaintiff for the greater between his or her actual damages or up to $500.00 in statutory damages per violation, pursuant to 29 U.S.C. §1854.

## COUNT II:

## 2016 VIOLATIONS OF THE MIGRANT AND SEASONAL AGRICULTURAL PROTECTION ACT BY EMPLOYER DEFENDANTS

61. The Plaintiffs incorporate and re-allege all above-stated paragraphs of this complaint as if fully set forth herein.

62.    The 2016 Plaintiffs bring this cause of action against all Employer Defendants.

63.    Each Employer Defendant was an agricultural employer of each 2016 Working Plaintiff within the meaning of AWPA, 29 U.S.C. §1802(2).

64.    At all times relevant to this action, each 2016 Working Plaintiff was a migrant agricultural worker within the meaning of the AWPA, 29 U.S.C. § 1802(8)(A).

65.    Each Working Plaintiff was employed by and was an employee of each Employer Defendant within the meaning of the AWPA, 29 U.S.C. § 1802(5).

66.    At all times relevant to this action, each 2016 Non-Working Plaintiff was entitled to the migrant housing protections under AWPA, 29 U.S.C. § 1823(a) and (b)(1) because each 2016 Non-Working Plaintiff was a minor child of a migrant agricultural worker as defined in the AWPA, 29 U.S.C. § 1802(8)(A).

**Recruitment**

67.    Plaintiffs Yolanda Cavazos, Virginia Morales, Maria Del Carmen Mendoza de Rubio, Esmeralda Rubio, Maria Carmen Rubio, and Maria Jesus Rubio Nieves each worked for DuRussels' Potato Farm in years prior to 2015.

68.    Employer Defendants authorized Oscar Cabello to recruit, solicit, and furnish migrant workers to work for Employer Defendants in 2016.

69.    In 2016, Employer Defendants, directly and through their agent Oscar Cabello, recruited workers, including the 2016 Working Plaintiffs, while they were residing in Texas.

70.    Oscar Cabello performed activities of a farm labor contractor, while acting on behalf of and as an agent of Employer Defendants within the meaning of 29 U.S.C. § 1802(6)-(7) in that he recruited, solicited, and furnished workers, including the 2016 Working Plaintiffs, for Employer Defendants.

71.    Upon information and belief, Oscar Cabello was paid for his farm labor contracting activities.

72.    Employer Defendant or their agents authorized Oscar Cabello to recruit, solicit, and furnish migrant workers in 2016.

73.    Employer Defendants failed to take reasonable steps to ascertain whether Oscar Cabello was licensed as a farm labor contractor.

74.    At all times relevant, Oscar Cabello was not licensed by the U.S. Department of Labor as a farm labor contractor as required by the AWPA.

75.    At all times relevant, Oscar Cabello was acting as an agent for Employer Defendants and acted within the scope of his agency.

76.    Under information and belief, Defendant Warner asked Mr. Cabello to contact specific workers, including 2016 Working Plaintiffs, to ask that the families return to work for Employer Defendants in 2016, because they were "good workers" in 2015 and she needed them.

77.    In May 2016, Mr. Cabello called Plaintiffs Yolanda Cavazos, Maria Del Carmen Mendoza de Rubio, Virginia Morales, Maria Carmen Rubio, and Maria Jesus Rubio Nieves separately and on the telephone to discuss Employer Defendants' need for labor.

78.    Mr. Cabello called the husband of Plaintiff Virginia Morales and told him that there was work for his family, including Plaintiff Virginia Morales. Mr. Cabello stated that the work would be just like their employment in prior years, including the 2015 season.

79.    Mr. Cabello called Plaintiff Maria Del Carmen Mendoza de Rubio and told her that there was work for her and her family.

80.    Mr. Cabello called Plaintiff Maria Carmen Rubio and told her that there was work for her and her family, including her daughters, Plaintiffs Maria Jesus Rubio Nieves and Esmeralda

Rubio, who had worked under the previous owners in prior years. Mr. Cabello told her that they would be paid well and that there would be "lots of good work."

81.     Plaintiff Yolanda Cavazos heard about work with Employer Defendants through her mother-in-law, Plaintiff Maria Carmen Rubio, and called Mr. Cabello to further discuss the work for herself and her family members, including Plaintiff PR and Plaintiff Pedro Rubio. Mr. Cabello told them that there was work for her and her family and that good housing would be provided.

82.     Plaintiff Maria Jesus Rubio Nieves heard about work with Employer Defendants through her mother, Plaintiff Maria Carmen Rubio, and called Mr. Cabello to further discuss the work for herself and her family members, including Plaintiff Eleazar Serna. Mr. Cabello told Plaintiff Maria Rubio that there would be so much work that they "would be fed up with the work."

83.     During the May telephone calls with 2016 Working Plaintiffs, Mr. Cabello told 2016 Working Plaintiffs' that there was work for them and their families and to arrive in Michigan by around May 28, 2016 to begin their employment for Employer Defendants.

84.     Upon contact with Mr. Cabello and before leaving Texas, Plaintiffs Yolanda Cavazos and Maria Jesus Rubio Nieves each contacted Defendant Warner on the telephone to further discuss the work for themselves and their family members.

85.     In May 2016, Defendant Warner told Plaintiffs Yolanda Cavazos and Maria Jesus Rubio Nieves, separately by telephone, that there was work for the 2016 Working Plaintiffs and to arrive in Michigan by the end of May to begin their employment.

86.     During the May telephone calls, Defendant Warner told Plaintiffs that they would be paid at least the Michigan minimum wage and that there would be around six months of work.

87.     Employer Defendants, directly or through an agent told the 2016 Working Plaintiffs:

A. They would receive the same amount or more work as in 2015;

B. They would receive good housing;

C. They would make at least the Michigan minimum wage;

D. They would receive piece rate for each box picked;

E. They would receive a lot of work.

88.    No 2016 Working Plaintiff received any written disclosures regarding the work terms and conditions of employment for Employer Defendants prior to them leaving Texas for Michigan.

**Housing**

89.    Employer Defendants provided and furnished Plaintiffs with the housing at East Camp.

90.    Defendant Warner, on behalf of Defendant Spud Factory, applied for an agricultural labor camp license for housing units located at 13993 DuRussel Drive, Manchester, Michigan and is known as the East Camp, identification number 81-0005 (hereinafter "East Camp").

91.    On or about May 26, 2016, the Michigan Department of Agriculture and Rural Development ("MDARD") inspected East Camp and found seventeen (17) critical violations of Michigan law, which create unsafe living conditions.

92.    MDARD refused to license East Camp for occupancy on May 26, 2016 due to its substandard condition.

93.    Upon the 2016 Plaintiffs' arrival in Michigan on or around May 28, 2016, Employer Defendants assigned 2016 Plaintiffs to housing units located at East Camp.

94.    2016 Plaintiffs lived in housing units at East Camp from on or around May 28, 2016 until the end of 2016 Working Plaintiffs' employment for Employer Defendants.

95.    The East Camp was not licensed for occupancy at the time that 2016 Plaintiffs were assigned to live in the units.

96.    The 2016 Plaintiffs were housed in units at East Camp that did not comply with health and safety standards in that they, *inter alia*:

A.  Did not have a cover over the baseboard heater and/or had exposed heating units, creating a burn or fire hazard;

B.  Had mold and mildew;

C.  Did not have electrical outlet covers;

D.  Had an insufficient number of mattresses for the number of Plaintiffs placed in each individual unit;

E.  Had mattresses on the floor and no bed frames were provided by Employer Defendants;

F.  Had more occupants assigned to the unit than the licensed capacity for that unit;

G.  Had faulty wiring;

H.  Did not have working smoke detectors;

I.  Did not have adequate door and window screens; and

J.  Had stoves, stove hoods, and stove fans that were in poor condition, causing rust and chipped paint to fall from the stove into the workers' food while cooking.

97.    On July 12, 2016, MDARD again inspected East Camp and found Employers Defendant had not taken all of the corrective actions necessary to be in compliance with state regulations.

98.    No 2016 Working Plaintiff saw or received a statement of the terms and conditions of occupancy of the housing in a language that the 2016 Working Plaintiff could understand.

99.    No 2016 housing license was posted at the East Camp during the 2016 season.

100.    During the 2016 season, Defendant Warner entered into worker's units, including 2016 Working Plaintiffs, without advance notice or permission from the housing occupants.

101.    On numerous occasions, the 2016 Working Plaintiffs complained to Defendant Warner about the conditions of the housing.

102.    After Plaintiff Maria Jesus Rubio Nieves and Plaintiff Eleazar Serna complained about the conditions of their housing, Defendant Warner entered their unit without permission.

103.    While Defendant Warner was in the unit of Plaintiff Maria Jesus Rubio Nieves and Plaintiff Eleazar Serna, Defendant Warner called Mr. Cabello. Mr. Cabello placed Defendant Warner on speaker phone and, in front of the workers on Mr. Cabello's crew that day, including the 2016 Working Plaintiffs, Defendant Warner publicly shamed and humiliated Plaintiffs Maria Jesus Rubio and Eleazar Serna while they were working in the field.

**Timekeeping and Payment**

104.    Employer Defendants paid 2016 Working Plaintiffs based on an hourly rate of $8.15 per hour for some activities ("hourly rate activities") and based on a piece rate for other activities ("piece-rate activities"). The piece rate varied depending on the activity.

105.    Employer Defendants did not track the time that 2016 Working Plaintiffs spent performing "piece-rate activities."

106.    On a timecard, 2016 Working Plaintiffs would electronically punch in and out for "hourly rate activities."

107.    When 2016 Working Plaintiffs performed "piece-rate activities," the number of pieces picked was recorded by Oscar Cabello, or another agent of Employer Defendants, while the 2016 Working Plaintiffs were in the field, and then later recorded on the individual 2016 Working Plaintiffs' timecards.

108.    Employer Defendants altered the number of pieces picked that was recorded on the timecards and entered the altered data into Defendant War-Ag Farms' electronic payroll system in order to create the "War-Ag Farms, LLC Time Sheet."

109.    Employer Defendants issued checks and paystubs to 2016 Working Plaintiffs with the employer identified as "The Spud Factory LLC dba DuRussels' Potato Farm."

110.    "The Spud Factory LLC dba DuRussels' Potato Farm" paystubs given to 2016 Working Plaintiffs reflect the reduced, altered number of pieces picked indicated on the "War-Ag Farms, LLC Time Sheet."

111.    Each 2016 Working Plaintiff has at least one pay period in which he or she was not paid for all "piece-rate activities" performed in that pay period.

112.    Employer Defendants' payroll records do not indicate the total number of hours worked by each 2016 Working Plaintiff for any pay period.

113.    Employer Defendants failed to provide each 2016 Working Plaintiffs a payroll record for each pay period that included the total hours worked during that pay period.

114.    Employer Defendants' failure to pay each 2016 Working Plaintiff for each piece picked and for each hour worked, resulted in each 2016 Working Plaintiff receiving a regular hourly rate below $7.25 during at least one pay period.

115.    The 2016 Working Plaintiffs worked in the same crew during the 2016 season.

116.    Employer Defendants altered the number of pieces picked, in order to reduce the amount paid to the 2016 Working Plaintiffs. The numbers of pieced picked that were reported in the field were marked out and reduced or not paid at all.

117.    In July 2016, Plaintiffs Yolanda Cavazos, Maria Del Carmen Mendoza de Rubio, Virginia Morales, Esmeralda Rubio, Maria Carmen Rubio, Maria Jesus Rubio Nieves, and

Eleazar Serna complained to Defendant Warner about Employer Defendants' failure to pay the piece rate for all "piece-rate activities" and regarding errors on their of timekeeping records.

118.    In response to the 2016 Working Plaintiffs' complaints, on or around July 25, 2016, Defendant Warner fired a group of workers, including Plaintiffs Maria del Carmen Mendoza de Rubio, Esmeralda Rubio and Maria Carmen Rubio and told them to leave the fields.

119.    Later that same day, Defendant Warner told them they were no longer fired and to work the remainder of the day.

120.    On or around July 8, 2016, Employer Defendants paid a "minimum wage catch-up" to each 2016 Working Plaintiff. The "minimum wage catch-up" only compensated 2016 Working Plaintiffs for the difference between $8.15 and $8.50 for hours 2016 Working Plaintiffs performed "hourly rate activities."

121.    The "minimum wage catch-up" was insufficient and failed to bring any 2016 Working Plaintiff's regular rate for all hours worked in each pay period above $8.50.

122.    After July 8, 2016, Employer Defendants did not include on 2016 Working Plaintiff's paystubs any record of hours worked or an hourly rate of pay.

123.    Employer Defendants continued to pay 2016 Working Plaintiffs below a regular hourly rate of $8.50 for compensable hours worked during a given pay period.

**Employment Conditions**

124.    In 2016, Working Plaintiffs began working for Employer Defendants on or around May 28, 2016.

125.    During the first two weeks of 2016 Working Plaintiffs' employment in 2016, there were no bathrooms and handwashing facilities at the worksite.

126.    Employer Defendants failed to provide potable, cold, drinking water to each 2016 Working Plaintiff at the worksite.

127.    Employer Defendants permitted pesticides to be sprayed during working hours near workers, including each of the 2016 Working Plaintiffs.

128.    2016 Working Plaintiffs did not receive the amount of work promised.

129.    Upon arriving in Michigan, 2016 Working Plaintiffs found that, unlike 2015, the fields in 2016 were unkempt and the produce was not in as good of condition. As a result, 2016 Working Plaintiffs had to spend more time and work to complete the "piece-rate activities" and did not make as much money for "piece-rate activities" in 2016 as they had in 2015.

130.    No 2016 Working Plaintiff saw or received a poster setting forth the rights and protections afforded to migrant and seasonal agricultural workers.

131.    Employment for Plaintiffs Yolanda Cavazos, Virginia Morales, PR and Pedro Rubio ended on or around July 10, 2016.

132.    Employment for Plaintiffs Maria Jesus Rubio Nieves and Eleazar Serna ended on or around July 13, 2016.

133.    Employment for Plaintiffs Maria Del Carmen Mendoza de Rubio, Esmeralda Rubio and Maria Carmen Rubio ended on or around July 31, 2016.

134.    Employer Defendants, jointly and separately, intentionally violated the 2016 Plaintiffs' rights under the AWPA and its attendant regulations by, *inter alia*:

> A.  Housing 2016 Plaintiffs in housing that did not comply with applicable substantive federal and state health and safety standards in violation of 29 U.S.C. § 1823(a);

B.  Housing 2016 Plaintiffs in housing that was not licensed for occupancy in violation of 29 U.S.C. § 1823(b)(1);

C.  Failing to ensure that the certificate of occupancy was posted in violation of 29 U.S.C. § 1823(b)(1);

135.  Employer Defendants, jointly and separately, intentionally violated the 2016 Working Plaintiffs' rights under the AWPA and its attendant regulations by, *inter alia*:

A.  Failing to disclose in writing all the terms and conditions of employment required by 29 U.S.C. § 1821(a) at the time of recruitment;

B.  Failing to post in a conspicuous place or present to each worker a poster setting forth the rights and protections afforded such workers as required by 29 U.S.C. § 1821(b);

C.  Failing to make, keep, and preserve payroll records for each worker for each pay period in violation of 29 U.S.C. § 1821(d)(1);

D.  Failing to provide accurate payroll records in violation of 29 U.S.C. § 1821(d)(2);

E.  Failing to pay wages owed when due as required by 29 U.S.C. § 1822(a);

F.  Violating the working arrangement in violation of 29 U.S.C. § 1822(c), by:

   i.  Failing to provide housing in compliance with state and federal law;

   ii.  Failing to pay the piece rate for all pieces picked;

   iii.  Failing to pay the hourly rate for all hourly work activities;

   iv.  Failing to pay wages timely under the Michigan Payment of Wages and Fringe Benefits Act, Mich. Comp. Laws 408.471, *et seq.*;

   v.  Failing to employ any 2016 Working Plaintiff through November 2016;

vi.   Failing to provide hand-washing facilities where 2016 Working Plaintiffs were working, in violation of the Occupational Health and Safety Act's ("OSH Act") attendant regulation, 29 C.F.R. 1910.141(b)(1)(i) and applicable state laws/regulations;

vii.  Failing to provide 2016 Working Plaintiffs with cool potable water and individual drinking cups, in violation of the OSH Act's attendant regulations, 29 C.F.R. 1910. 141 (b)(1)(iii) and applicable state laws/regulations;

viii. Failing to provide restroom facilities in the fields where 2016 Working Plaintiffs were working, in violation of the OSH Act's attendant regulations, 29 C.F.R. 1910.141(c) and applicable state laws/regulations;

ix.   Failing to protect the workers from pesticide drift, to warn them of the application of pesticides in fields near where they were working, and to restrict access to pesticide-treated areas, in violation of the Environmental Protection Agency's Worker Protection Standard, 57 Fed. Reg. 38102 (Aug. 21, 1992)(codified at 40 C.F.R. parts 156 and 170); and

x.    Failing to comply with all applicable employment-related and health and safety laws, including the FLSA, WOWA, and MIOSH Act.

G.  Utilizing the services of a farm labor contractor to perform farm labor contractor activities for which the individual was not authorized to engage in by the U.S. Department of Labor, in violation of 29 U.S.C. § 1842.

136.  Employer Defendants, jointly and separately, intentionally violated Plaintiffs Maria Del Carmen Rubio Mendoza and Maria Carmen Rubio's rights under the AWPA and its attendant

regulations by failing to provide required disclosures and postings in Spanish as required by 29 U.S.C. § 1821(g).

137.    Employer Defendants, jointly and separately, intentionally violated Plaintiffs Maria Del Carmen Rubio Mendoza, Esmeralda Rubio, Maria Carmen Rubio, Maria Jesus Rubio Nieves, and Eleazar Serna's rights under the AWPA and its attendant regulations by discriminating or retaliating against a worker for asserting any of their rights under the AWPA in violation of 29 U.S.C. § 1855(a).

138.    The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Employer Defendants and were intentional within the meaning of the AWPA.

## COUNT III:

## 2016 VIOLATIONS OF THE MIGRANT AND SEASONAL AGRICULTURAL PROTECTION ACT BY D & D WARNER LAND LLC

139.    The Plaintiffs incorporate and re-allege all above-stated paragraphs of this complaint as if fully set forth herein.

140.    All 2016 Plaintiffs bring this cause of action against Defendant Warner Land.

141.    At all relevant times, Defendant Warner Land owned the property and housing units where East Camp was located.

142.    Defendant Warner Land intentionally violated the 2016 Plaintiffs' rights under the AWPA and its attendant regulations by, *inter alia*:

    A. Housing 2016 Plaintiffs in housing that did not comply with applicable substantive federal and state health and safety standards in violation of 29 U.S.C. § 1823(a);

B.  Housing 2016 Plaintiffs in housing that was not licensed for occupancy in violation of 29 U.S.C. § 1823(b)(1); and

C.  Failing to ensure that the certificate of occupancy was posted in violation of 29 U.S.C. § 1823(b)(1).

143.   The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Employer Defendants and were intentional within the meaning of the AWPA.

## COUNT IV:

## FAIR LABOR STANDARDS ACT VIOLATIONS AS TO 2016 WORKING PLAINTIFFS BY EMPLOYER DEFENDANTS

144.   Plaintiffs incorporate and re-allege all above-stated paragraphs and allegations set forth above.

145.   All 2016 Working Plaintiffs bring this cause of action against Employer Defendants.

146.   Each 2016 Working Plaintiff was an "employee" of Employer Defendants within the meaning of FLSA 29 U.S.C. § 203(e).

147.   Each Working Plaintiff was employed by each Employer Defendant within the meaning FLSA, 29 U.S.C. § 203(g).

148.   Employer Defendants were an enterprise engaged in commerce as defined in in FLSA, 29 U.S.C. § 203(s)(1)(A).

149.   Employer Defendants were engaged in the production of goods for movement in interstate commerce or for incorporation as an ingredient in products that could be anticipated to move in interstate commerce.

150.    While working for Employer Defendants in Michigan, each 2016 Working Plaintiff was involved in the harvesting and packaging of vegetables and other fresh produce that were sold and delivered to Employer Defendants' customers outside of Michigan.

151.    Employer Defendants failed to pay each of the 2016 Working Plaintiffs the federal minimum wage of seven dollars and twenty-five cents ($7.25) for each hour worked, in violation of 29 U.S.C. §206(a).

152.    Employer Defendants failed to make, keep, and preserve records of the wages, hours, and other conditions and practices of the 2016 Working Plaintiffs' employment, in violation of 29 U.S.C. §211(c).

153.    Employer Defendants failed to post and keep posted a notice explaining the 2016 Working Plaintiffs' rights under FLSA in a conspicuous place where the Plaintiffs could readily see it and read it, in violation of 29 U.S.C. §516.4.

154.    Each 2016 Working Plaintiff incurred costs for travel expenses for themselves and their family members traveling with them from Texas to Michigan to work for the Employer Defendants.

155.    These expenses were incurred for the benefit and convenience of Employer Defendants and were not reimbursed by Employer Defendants.

156.     Employer Defendants failed to reimburse any 2016 Working Plaintiff for travel expenses, resulting in a *de facto* deduction in the amount of their expenditures from their pay during the first pay period, which brought 2016 Working Plaintiffs' wages below an hourly rate of $7.25 during the first pay period.

157.    Employer Defendants willfully violated the provisions of FLSA.

158.     As a consequence of the Employer Defendant's violations of the FLSA, the 2016 Working Plaintiffs are entitled to their unpaid FLSA minimum wages, plus an additional equal amount in liquidated damages, together with court costs and reasonable attorneys' fees, pursuant to 29 U.S.C. §216(b).

## COUNT V:

## MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT ("WOWA") VIOLATIONS AS TO

## 2016 WORKING PLAINTIFFS BY EMPLOYER DEFENDANTS

159.     Plaintiffs incorporate and re-allege all above-stated paragraphs and allegations set forth above.

160.     All 2016 Working Plaintiffs—except minor PR—bring this cause of action against Employer Defendants

161.     At all times relevant, all 2016 Working Plaintiffs—except minor PR—were employees of the Employer Defendants within the meaning of MICH. COMP. LAWS §408.412(c).

162.     Each 2016 Working Plaintiff was employed by each Employer Defendant within the meaning of the Michigan Workforce Opportunity Wage Act ("WOWA"), M.C.L.S § 408.12(b).

163.     Employer Defendants failed to pay each 2016 Working Plaintiff at least the Michigan minimum wage of eight dollars and fifty cents ($8.50) for every compensable hour worked for Employer Defendants when it was due, in violation of MICH. COMP. LAWS §408.414.

164.     Employer Defendants failed to furnish each 2016 Worker Plaintiff with a statement, in each pay period required, which included the hours worked by each 2016 Working Plaintiff, in violation of MICH. COMP. LAWS §408.417.

165.    The 2016 Working Plaintiffs are entitled to their unpaid minimum wages, plus an additional equal amount in liquidated damages, together with court costs and reasonable attorneys' fees, as provided in MICH. COMP. LAWS §408.419(1).

## COUNT VI:

## BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT AGAINST EMPLOYER DEFENDANTS

166.    Plaintiffs reincorporate and allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

167.    At all times relevant to this action, Employer Defendants were an "employer" within the meaning of MICH. COMP. LAWS §453.501(2)(b).

168.    At all relevant times to this action, each Working Plaintiff was an "employee" of Employer Defendants within the meaning of ERKA § 423.501(2)(a).

169.    On May 31, 2017, Plaintiffs, through their attorney, provided Employer Defendants with a written request for access to personnel records for nine of the 2015 and 2016 Working Plaintiffs, including Plaintiffs Yolanda Cavazos, Maria Del Carmen Mendoza de Rubio, Virginia Morales, Esmeralda Rubio, Maria Carmen Rubio, Maria Jesus Rubio Nieves, Pedro Rubio, PR and Eleazar Serna, pursuant to MICH. COMP. LAWS §421.501, *et. seq.*

170.    Employer Defendants failed to provide the requested documents for Plaintiffs Yolanda Cavazos, Maria Del Carmen Mendoza de Rubio, Virginia Morales, Esmeralda Rubio, Maria Jesus Rubio Nieves, Pedro Rubio, PR and Eleazar Serna.

171.    On July 3, 2017, Plaintiffs, through their attorney, reasserted their written request for access to all personnel files for all 2015 and 2016 Working Plaintiffs. Employer Defendants failed to respond to that request.

172.    On May 9, 2019, Plaintiffs, through their attorney, reasserted their written request for access to all personnel files for all 2015 and 2016 Worker Plaintiffs, including Plaintiffs Yolanda Cavazos, Maria Del Carmen Mendoza de Rubio, Virginia Morales, Santos Ortiz, Valeriano Ortiz, Esmeralda Rubio, Maria Carmen Rubio, Maria Jesus Rubio Nieves, Monica Rubio, Pedro Rubio, PR and Eleazar Serna.

173.    Employer Defendants willfully and knowingly failed to timely provide the requested personnel files on behalf of Plaintiffs Maria Del Carmen Mendoza de Rubio, Santos Ortiz, Valeriano Ortiz, Esmeralda Rubio and Maria Jesus Rubio, in violation of MICH. COMP. LAWS §423.511, *et. seq.*

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief against each Defendant, jointly and severally, as follows:

A.   Declare that all Defendants intentionally violated the AWPA and its corresponding regulations as set forth in Count I, Count II, and Count III;

B.   Grant judgment in favor of Plaintiffs and against Defendants on the AWPA claims and its corresponding regulations as set forth in Count I, Count II, and Count III;

C.   Award each Plaintiff statutory damages of $500 for each violation of a provision of AWPA. If any Plaintiff proves actual damages greater than $500 for a violation of AWPA, award said Plaintiff his or her actual damages for said violation;

D.   Enter declaratory judgment that Employer Defendants willfully violated the rights of the Working Plaintiffs under the FLSA as set forth in Count IV;

E.   Grant judgement in favor of Plaintiffs and against Employer Defendants on Plaintiff's FLSA claims as set forth in Count IV;

F.  Grant judgment in favor of Plaintiffs and against Defendant on Plaintiff's WOWA claims, as set forth in Count V;

G.  Award each Working Plaintiff the amount of his or her unpaid minimum wages for each workweek in which he or she was not paid at least the minimum wage, pursuant to FLSA, 29 U.S.C. §216(b) and WOWA, MICH. COMP. LAWS §§408.393 and 408.394;

H.  Award each Working Plaintiff an amount equal to his or her unpaid wages for each workweek in which he or she was not paid at least the minimum wages owed when due as liquidated damages, pursuant to FLSA, 29 U.S.C. 216(b) and WOWA, MICH. COMP. LAWS §§408.419(1);

I.  Declare that Employer Defendants willfully and knowingly violated the ERKA as set forth in Count VI, and award each Working Plaintiff statutory damages of two hundred dollars ($200.00), constituting a total aggregate of $1,000, plus actual damages, costs, and attorney's fees pursuant to ERKA §423.511;

J.  Award Plaintiffs their reasonable attorney's fees as provided by the FLSA, WOWA, and ERKA; and

K.  Award the Plaintiffs pre-judgment and post-judgment interest, as allowed by law and

L.  Award the Plaintiffs all other relief to which they may be justly entitled.

Respectfully submitted,

Dated: June 3, 2019            s/Elizabeth McClain

Elizabeth McClain (P83023)
FARMWORKER LEGAL SERVICES,
a division of the Michigan
Advocacy Program
3030 S. 9th Street, Suite 1A
Kalamazoo, MI 49009
Tel. (269) 492-7190 / Fax (269) 492-7198
emcclain@farmworkerlaw.org

s/Kara K. Moberg
Kara K. Moberg (P73820)
FARMWORKER LEGAL SERVICES,
a division of the Michigan
Advocacy Program
3030 S. 9th Street, Suite 1A
Kalamazoo, MI 49009
Tel. (269) 492-7190 / Fax (269) 492-7198
kmoberg@farmworkerlaw.org

ATTORNEYS FOR PLAINTIFFS